NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

_____
:
TRAVELERS PROPERTY :
CASUALTY COMPANY OF : CIVIL ACTION NO. 04-5830 (JAP)
AMERICA, et al., :
:
         Plaintiff, :
  v. : **OPINION**
:
A.D. TRANSPORT EXPRESS, INC., :
:
         Defendant. :
:
_____:

PISANO, District Judge.

    Plaintiff Travelers Property Casualty Company of America ("Plaintiff" or "Travelers") brings this action seeking to recover damages from Defendant A.D. Transport Express, Inc. ("Defendant" or "A.D. Transport") arising out of the loss of a truckload of merchandise that was stolen while being transported by Defendant. Currently before the Court is Plaintiff's motion for summary judgment and Defendant's cross-motion for summary judgment. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1332. For the reasons set forth below, the Court denies Plaintiff's motion for summary judgment and grants in part Defendant's motion for summary judgment in that A.D. Transport's liability in this case is limited to $10,000.

**I.   Background**

    Plaintiff Travelers, an Illinois corporation with offices in Hartford, Connecticut, is the subrogee of Summit Transportation and Fulfillment, Inc. ("Summit"). Summit, which is not a

party to this action, is a trucking, transportation, warehousing and distribution company headquartered in Secaucus, New Jersey.  Defendant A.D. Transport, a Michigan corporation, is a licensed and authorized motor carrier that transports goods in interstate commerce.

Summit and A.D. Transport began a business relationship in July 2001 whereby A.D. Transport would deliver shipments of garments from Summit's warehouse in Secaucus, New Jersey, to Summit's customer, Ann Taylor, Inc. ("Ann Taylor") in Louisville, Kentucky.  Prior to the shipment leading to this lawsuit, A.D. Transport delivered approximately 670 shipments from Summit's warehouse to Ann Taylor.  For each shipment, the A.D. Transport driver would sign a bill of lading prepared by Summit. After completing each delivery to Ann Taylor, A.D. Transport would forward Summit a freight bill and a document referred to as a Pro Bill.[1]  Each Pro Bill contained a provision which read as follows:

> VALUE AGREED TO BE $.50 PER SHIPMENT OR .50 CENTS PER POUND PER PIECE UNLESS EXCESS VALUE DECLARED.  EXCESS VALUE CHARGE WILL BE COMPUTED AT .40 CENTS PER $100 OF THE EXCESS.
>
> DECLARED VALUE EXCEEDING $10,000.00 MUST BE APPROVED AND COMMUNICATED IN WRITING PRIOR TO THE SHIPMENT TO BE VALID.

A.D. Transport Pro Bill, attached to the certification of John C. Lane ("Lane Cert.") as Exhibit

---

[1] Plaintiff and Defendant dispute whether this document should be referred to as a bill of lading.  Although Defendant refers to it as a bill of lading in its motion papers, Plaintiff argues that the document cannot be a bill of lading because it was issued after, rather than prior to, each shipment.  In this opinion, the Court will refer to the document as a Pro Bill, as Gary Percy, President of A.D. Transport, identified it, but notes that the label given to the document is not material to the Court's resolution of the instant motions, given the facts and circumstances in this case.

H.[2]

On May 3, 2004, A.D. Transport picked up a truckload of garments from Summit's warehouse in Secaucus, which were to be delivered to Ann Taylor in Louisville. The goods were loaded by Summit onto A.D. Transport's trailer. At the time of pick-up, Summit presented a bill of lading bearing number S50905, which Summit prepared on it bill of lading form, to Lee Hobson ("Hobson"), the driver of the A.D. Transport trailer. Hobson signed the bill of lading. The bill of lading contains a box captioned "Value," which provides a space for a possible value to be inserted. *Id*. No value is listed. *Id.*

The goods were stolen in the course of transit to Ann Taylor and therefore were never delivered to Ann Taylor. As a result of the loss, Ann Taylor presented a claim to Summit in the amount of $1,715,198.91. Pursuant to an insurance policy issued by Travelers to Summit, Travelers paid Ann Taylor's subrogated insurer, American Home Assurance Company ("AHAC"), $650,000 for the landed costs of the goods in full settlement of Summit's liability for the loss. In exchange, Travelers received an assignment of all claims arising out of the loss of the goods from both Ann Taylor and AHAC.

Travelers thereafter commenced the instant action against A.D. Transport seeking to recover the $650,000 it paid to AHAC. Travelers and A.D. Transport each moved for summary judgment in November 2005, prior to the completion of discovery. In an order dated January 27, 2006, the Court denied both motions on the grounds that material facts were in dispute. Discovery in this case has since concluded, and the parties have renewed their motions for

---

[2]The Pro Bill attached to the affidavit of John Lane is an example of a typical A.D. Transport Pro Bill sent to Summit.

summary judgment. Travelers moves for summary judgment on the grounds that pursuant to the Carmack Amendment, 49 U.S.C. § 14706, *et seq.*, A.D. Transport is liable for the full value of the stolen goods. A.D. Transport moves for partial summary judgment, arguing that Plaintiff's complaint must be dismissed because Plaintiff cannot prove that the goods were in good order when tendered to A.D. Transport. Defendant further argues that in any event, A.D. Transport's liability is limited to $10,000 in accordance with the released value provisions of its tariff and its bills of lading.[3]

### III. Standard of Review

A court shall grant summary judgment under Rule 56(c) of the Federal Rules of Civil Procedure "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The substantive law identifies which facts are critical or "material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

On a summary judgment motion, the moving party must show, first, that no genuine issue

---

[3]A.D. Transport also moves for summary judgment dismissing the First and Third Causes of Action – which Plaintiff argues are state law claims preempted by the Carmack Amendment – and any non-Carmack causes of action contained in the Second Cause of Action. It is true that state law claims involving carrier liability for damage to goods in interstate shipment are preempted by the Carmack Amendment. *Penske Logistics, Inc. v. KLLM, Inc.*, 285 F.Supp.2d 468, 475 (D.N.J. 2003). However, Plaintiff asserts that none of the three causes of action pleaded in the amended complaint are state law claims. Rather, Plaintiff argues that the first cause of action is precisely authorized by 49 U.S.C. § 14706(a)(1), and that the Second and Third Causes of Action are alternative pleadings which posit that Ann Taylor is the shipper and Summit is the carrier. Upon reviewing the amended complaint, the Court finds that each cause of action is authorized by the Carmack Amendment. Thus, the Court will not dismiss the claims as preempted.

4

of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to present evidence that a genuine, fact issue compels a trial. *Id.* at 324. In so presenting, the non-moving party must offer specific facts that establish a genuine issue of material fact, not just "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Thus, the non-moving party cannot rely on bare assertions or conclusory allegations to support his affirmative claims. *See, e.g., Morales v. Busbee*, 972 F. Supp. 254, 259 (D.N.J. 1997). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

IV.  Analysis

    A.  The Carmack Amendment

The Carmack Amendment provides the exclusive remedy against an interstate common carrier for breach of a contract of carriage. 49 U.S.C. § 14706. Under the Carmack Amendment, a motor carrier is liable for the full value of the loss or damage to goods carried in interstate commerce. 49 U.S.C. § 14706(a)(1). There is an exception, however, to this rule– a carrier may limit its liability to a value established by a written agreement between the carrier and shipper if that value would be reasonable under the circumstances surrounding the transportation. 49 U.S.C. § 14706 (c)(1)(A).

The Third Circuit has held that, in order to limit its liability, a carrier must (a) maintain a tariff within prescribed guidelines of the ICC; (b) obtain the shipper's agreement as to his choice of liability; (3) give the shipper a reasonable opportunity to choose between two or more levels of

liability; and (4) issue a receipt or bill of lading prior to moving the shipment. *Carmana Designs Ltd. v. North American Van Lines, Inc.*, 943 F.2d 316, 319 (3d Cir. 1991). The first requirement has been replaced, except in limited circumstances not applicable here, with the requirement that the carrier provide to the shipper upon request a written copy of the bases for its rate. *Emerson Electric Supply Company v. Estes Express Lines Corporation*, 451 F.3d 179 (3d Cir. 2006).

To establish a *prima facie* case against a carrier under the Carmack Amendment, a shipper must prove the following three elements: (1) delivery of the goods to the initial carrier in good condition, (2) damage of the goods before delivery to their final destination; and (3) the amount of damages." *Beta Spawn v. FFE Transportation Services, Inc.*, 250 F.3d 218, 223 (3d Cir. 2001).

### 1. Good Order of the Goods

The Court will first address Defendant's argument that the complaint should be dismissed in its entirety because Plaintiff cannot prove an essential element of its claim, that the goods were in good order when tendered to A.D. Transport. Defendant asserts that Plaintiff has provided no proof of the condition of the goods tendered to A.D. Transport. The Court rejects Defendant's argument that the complaint must be dismissed on this basis.

As Defendant correctly argues, Plaintiff cannot exclusively rely on A.D. Transport's driver's signature on Summit's bill of lading acknowledging the good condition of the goods. *Blue Bird Food Prods. Co. v. Baltimore & Ohio R.R. Co.,* 492 F.2d 1329, 1331 (3d Cir. 1974) (finding that a shipper may not rely solely on a clean bill of lading where goods are not open or visible, because the condition of such goods are unknown to the carrier). A shipper may rely, however, on other reliable evidence – direct or circumstantial – which is "sufficient to establish

by a preponderance of all the evidence the condition of the goods upon delivery." *Beta Spawn*, 250 F.3d at 224-25 (citing *Pillsbury Co. v. Illinois Cent. Gulf R.R.*, 687 F.2d 241, 244 (8th Cir. 1982)).

Although Plaintiff has not provided any direct evidence regarding the good condition of the goods, the Court is satisfied that Plaintiff has provided circumstantial evidence regarding their condition. Specifically, Plaintiff has presented evidence that there was no damage to the cartons that contained the garments. Indeed, Summit's controller, Martin Linkletter, testified that the absence of damage notations on the manifest for the loading of the trailer indicates that the cartons were in good condition when loaded. (Deposition of Martin Linkletter at 84-85, attached to the affidavit of Edward Farman as Exhibit F). Further, Plaintiff asserts that business records consisting of packing lists and manifests indicate that the cartons contained non-perishable garments. Additionally, Plaintiff argues that in all of the 670 prior shipments, there were no shortage or damage claims, and that it may be inferred from this that the 671st shipment was the same.

Based on the foregoing, the Court finds that Plaintiff has presented evidence of the good order of the goods, and therefore, can make out a prima facie case under the Carmack Amendment. Thus, the Court will proceed to Defendant's argument that liability be limited to $10,000.

    **2.**    **Limitation of Liability**

A.D. Transport argues that it is not liable for the entire loss of the goods under the Carmack Amendment because it properly limited its liability in both its tariff and in its bills of lading, or Pro Bills. A.D Transport further asserts that the requirements for limiting liability laid

down by the Third Circuit case law may be established by an extensive course of dealing between the parties. A.D. Transport argues that such an extensive course of dealing exists in this case.

Plaintiff, on the other hand, argues that A.D. Transport did not comply with the Carmack Amendment requirements to limit its liability. Specifically, Plaintiff argues that A.D. Transport and Summit did not agree in writing to limit liability for the stolen shipment. Additionally, Plaintiff argues that A.D. Transport did not offer Summit a choice of levels of liability.

Upon examining the shipping documents provided by the parties and considering the course of dealing between A.D. Transport and Summit surrounding the documents, the Court finds that A.D. Transport properly limited its liability to $10,000. Therefore, the Court will grant in part Defendant's motion for partial summary judgment and deny Plaintiff's motion for summary judgment.

### 1.      Written Agreement Limiting Liability

First, the A.D. Transport Pro Bills sent to Summit after each delivery to Ann Taylor contained a prominently displayed and clearly worded released value. The documents specified that the value was agreed to be $50 per shipment or .50 cents per pound per piece unless excess value was declared, that excess value charged would be computed at .40 cents per $100 of the excess, and that a declared value exceeding $10,000.00 must be approved and communicated in writing prior to the shipment to be valid.[4] (A.D. Transport Pro Bill, attached to the Lane Cert. as

---

[4] The Court notes that A.D. Transport's tariff contains similar language to that in its Pro Bills. The tariff contains a provision entitled "Released Value, which provides the following:

> The released value for all shipments is the greater of $50.00 or $.50 per pound, said value will not exceed a maximum amount of $10,000.00, unless a higher released or declared value is specified by the shipper on the bill of lading, air bill, or shipping order.

Exhibit H).

Although the Pro Bills were sent to Summit <u>after</u> each Ann Taylor delivery, the Court is satisfied that they constitute a written agreement that properly limits A.D. Transport's liability in this case, particularly in light of the extensive course of dealing between A.D. Transport and Summit. Indeed, the evidence in the record indicates that prior to the May 3, 2004 shipment leading to this lawsuit, A.D. Transport and Summit had dealt with one another on approximately 670 previous occasions. After each of the prior 670 shipments from Summit's warehouse to Ann Taylor, A.D. Transport sent Summit a freight bill, accompanied by a Pro Bill containing the limitation of liability provision. Summit acknowledges that it received each freight bill and Pro Bill, and subsequently paid A.D. Transport every time. Moreover, Summit's controller, Martin Linkletter, acknowledged that he read the limitation of liability on at least one occasion. (Deposition of Martin Linkletter at 88-91, attached to the Lane Cert. as Exhibit J.)

Based on the above undisputed facts, the Court finds that by continuing to accept the freight bills and Pro Bills and then issue payments to A.D. Transport, Summit ratified the limitation of liability contained in the Pro Bills. The Court finds that this limitation of liability applied to the May 3, 2004 shipment, despite the fact A.D. Transport did not issue Summit a Pro Bill after that shipment.[5] Summit was on notice of the written limitation of liability, based on

---

> Values exceeding $10,000.00 must be approved and communicated in writing prior to the shipment to be valid.

(A.D. Transport tariff, attached to the affidavit of Gary Percy as Exhibit 2).

[5]A.D. Transport did not send Summit a freight bill and Pro Bill after the May 3, 2004 because the shipment was stolen.

having received approximately 670 Pro Bills containing the limitation language <u>prior to</u> the May 3, 2004 shipment. The Court also notes that Summit did not declare a valuation in the "Value" box on the bill of lading drafted by Summit pertaining to the May 3, 2004 shipment, which Summit presented to the A.D. Transport driver at the time the driver received the goods. Nor is there any evidence that Summit declared a value for any of the prior shipments.

The Court is mindful that this is not a case involving an unsophisticated or inexperienced shipper. On the contrary, Summit is a sophisticated trucking, transportation, warehousing and distribution company. It operates its own fleet of trucks, as well as a 100,000 square-foot warehouse and consolidation operation on behalf of major importers including David's Bridal, Dress Barn, Daffy's, Modell's and Ann Taylor. Further, as highlighted above, Summit and A.D. Transport engaged in an extensive course of dealing with one another. As the Third Circuit stated in *Carmana Designs LTD v. North American Van Lines, Inc.*, 943 F.2d 316, 321 (3d Cir. 1991), "[a] shipper's sophistication, abundant experience, or extensive prior dealings with a carrier may constitute additional evidence of a limitation agreement between the parties." (citations omitted). The Court finds that Summit's sophistication and experience, as well as extensive prior dealings with A.D. Transport, constitute additional evidence of a limitation agreement in this case.

### 2.     Choice of Liability Levels

Under the Carmack Amendment, a carrier seeking to enforce a released value or other limitation of liability must provide a shipper with a fair opportunity to choose between two or more different rates with corresponding levels of liability. *Emerson Electric Supply Company*, 451 F.3d at 187. A reasonable opportunity to choose between different levels of coverage

"means that the shipper had both reasonable notice of the liability limitation and the opportunity to obtain information necessary to make a deliberate and well-informed choice." *Carmana Designs*, 943 F.2d at 320 (internal quotations and citations omitted).

Plaintiff argues that A.D. Transport may not limit its liability because it did not offer Summit a choice of liability levels. In support of this argument, Plaintiff points to the deposition testimony of Gary Percy, in which Percy testified that when negotiating rates with different shippers, A.D. Transport has on occasion refused to quote a rate for a requested value in excess of $10,000. Plaintiff asserts that A.D. Transport cannot be said to offer a choice of rates when in some cases it does not, and where it is not obligated to do so. Essentially, Plaintiff argues that A.D. Transport does not offer a choice unless it always offers a choice.

The Court rejects this argument, finding it irrelevant to the instant matter that, on occasion, A.D. Transport has in the past refused to quote other shippers a rate for a requested value in excess of $10,000. Had Plaintiff argued and presented evidence that A.D. Transport refused to offer <u>Summit</u> a choice of rates, then the Court's conclusion in this regard might very well be different. However, the record before the Court indicates that A.D. Transport did give Summit the opportunity to increase the limit of liability. Specifically, the Pro Bills contain clear language that limits Summits liability but provides Summit with the opportunity to declare a higher value and pay a higher freight rate in order to obtain a higher limitation of liability.

The Court also rejects Plaintiff's argument that in addition to failing to offer a choice of rates, A.D. Transport did not give Summit a reasonable opportunity to make a choice. Plaintiff points to A.D. Transport's tariff, which requires that the value declaration be on the bill of lading. Plaintiff also cites to two cases, *Camar Corp. V. Preston Trucking Co.*, 221 F.3d 271,

11

276 (1st Cir. 2000) and *Rohner Gehrig Co., v. Tri-State Motor Transit*, 950 F.2d 1079 (5th Cir. 1992), which support the proposition that a motor carrier does not give a shipper a reasonable opportunity to choose a higher level of liability if the bill of lading does not have a place to declare a value.

Plaintiff argues that despite the requirement that the value declaration be on the bill of lading, A.D. Transport does not provide a bill of lading form that has a place for a value declaration. As Plaintiff recognizes, however, A.D. Transport relies on shippers to provide bills of lading. Moreover, the record indicates that Summit prepared a bill of lading and presented it to A.D. Transport for the May 3, 2004 shipment. As explained above, this bill of lading has a place to make a value declaration, but Summit left this space blank. Summit did, however, have a choice to declare a value, and could have done so on this form. Summit also had the opportunity to communicate to A.D. Transport that it wished to declare a value exceeding $10,000.[6]

## V. Conclusion

For the reasons stated in this opinion, the Court denies Plaintiff's motion for summary judgment and grants in part and denies in part Defendant's motion for summary judgment. An appropriate order accompanies this opinion.

Date: August 30, 2007          /s/ JOEL A. PISANO
                                                       United States District Judge

---

[6] Indeed, after the May 3, 2004 shipment, Summit asked A.D. Transport for a freight rate that would include insurance coverage in excess of $10,000. Affidavit of Gary Percy at ¶¶19-22. Summit offered a freight rate of $850 per shipment, which would include $300,000 of insurance. *Id.* Summit, however, rejected that rate. *Id.*